MARTHA GOLDBERG, complainant-respondent,

*v.*

HUDSON COUNTY NATIONAL BANK et al., defendants; PHILIP
GOLDBERG (otherwise known as PINCUS GOLDBERG) et
al., defendants-appellants.

[Decided January 26th, 1938.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"January 28th, 1931, Samuel N. Goldberg entered into an insurance trust agreement with Hudson County National Bank (hereinafter called Bank) as trustee and on the same day executed his will naming the Bank as executor. Under the terms of the agreement he deposited with the Bank three policies on his life in Metropolitan Insurance Company (hereinafter called Metropolitan) for a total face value of $50,000, two policies in Prudential Insurance Company for $1,000 each and subsequently he deposited with the Bank two more Equitable policies for $5,000 each. The Bank was named as beneficiary in all policies with the right therein reserved to the insured to change his beneficiary.

"Under the terms of the trust agreement Goldberg had the right to withdraw and add policies; to assign any policy and to change the named beneficiary; to surrender any policy for cash and to exercise those rights without consent of the Bank or any beneficiary. The agreement reserved the right to him to revoke and terminate it by instrument in writing delivered to the Bank and upon payment of a revocation fee of $50.

"Upon Goldberg's death the agreement required the Bank to hold the proceeds of the policies and to divide the fund into two trusts, one called the first trust fund consisting of $25,000, the income and *corpus* of which was to be paid to certain named relatives of Goldberg and the other, consisting of the balance of the insurance moneys, called the residuary trust fund, out of which payment of specified sums were to be made to certain named relatives of Goldberg and the income of the remainder to be paid to Goldberg's son, Sidney, and his wife and after their death the *corpus* to be paid to Sidney's children.

"Goldberg's will executed simultaneously with the trust agreement provided for an annuity to complainant (the testator's wife), of $3,120 with provision that if the income from the estate was insufficient to provide such annuity, sufficient principal should be applied for that purpose. The balance of testator's estate was given to testator's son, Sidney, and his family.

"In the early part of 1935 Goldberg had in mind a different disposition of his estate and of the proceeds of his insurance policies and on January 26th of that year he requested the Bank to send a copy of his will and the trust agreement to his attorney, Bertram Lichtenberg, and the Bank complied. February 7th, 1935, he requested the Bank to send all his insurance policies to Lichtenberg and the Bank did so. March 21st, 1935, Goldberg wrote the Bank as follows:

" 'Please be advised that I wish to exercise the right to revoke and terminate the insurance trust agreement between us dated January 28th, 1931. I enclose herewith check in the sum of $50 in payment of the withdrawal or revocation fee provided by the agreement. Mr. Lichtenberg or myself will notify you on what date the revocation is to be effective.

" 'Will you please send to me c/o Bertram Lichtenberg, 11 West 42nd Street, New York City, room 2346, the original agreement. If there are any other papers necessary for you to sign in connection with the change of beneficiaries of the insurance policies, or otherwise, I shall communicate with you.

" 'I appreciate all your courtesies to me in the past and I trust that our relations in the future will be just as pleasant.'

"The same day the above letter was sent to the Bank, Goldberg wrote the companies carrying the eight policies on his life that he wished to make change in his beneficiaries thereunder and requested them to send Lichtenberg the necessary forms for that purpose, but he subsequently withdrew the request, probably because he had retained other attorneys in place of Lichtenberg, and on July 11th, 1935, he again wrote the insurance companies that he proposed to change his beneficiary and requested forms for the purpose and on the same day he executed a new will, revoking his will of January 28th, 1931.

"He received forms for change of beneficiary and using those forms he made the following changes in beneficiary from the Bank, which changes were duly endorsed on the policies: August 1st, 1935, two Equitable policies for $5,000 each, made payable to insured's estate; August 2d, 1935, two Prudential policies for $1,000 each, made payable to insured's estate; August 8th, 1935, Equitable policy for $500, made payable 23/25 to certain named relatives of the insured and 2/25 to the insured's estate. This left the three Metropolitan policies of the face value of $50,000 still standing in the name of the Bank as beneficiary.

"By his will executed July 11th, 1935, Goldberg named his son, Sidney N. Goldberg, and Charles Levine his executors and after a bequest of wearing apparel, jewelry and household effects to said son, he gave the residue of his estate to his executors in trust to pay income and eventually principal, to his son, his son's wife and children. The second clause of the will reads as follows:

" 'I have made provisions outside of this will for the support, maintenance and comfort of my beloved wife Martha G. Goldberg, in such manner that her needs and comforts will be unaffected by the vicissitudes of the business wherein I am engaged or of enterprises wherein I or my estate may have financial interest. Solely because of such assurance, I make no provision for my said beloved wife in this my last will and testament.'

"When Goldberg executed his will and thereafter made the above stated changes in beneficiaries in five of his insurance policies, he contemplated eliminating the Bank as beneficiary trustee under his three Metropolitan policies and it is claimed on behalf of complainant, that he intended to give her a beneficial interest under those three policies and had taken sufficient steps to do so, but he died suddenly August 17th, 1935, leaving the Metropolitan policies unchanged. This suit is brought by the widow claiming that this court should give effect to Goldberg's intent by setting aside for her benefit, so much of the proceeds of said policies as will provide for the payment to her of $200 monthly for life and by directing that any excess of proceeds be paid to the executors of Goldberg's

will. The Metropolitan paid into court $41,031.73 as the amount due on its policies (after deducting loans made against them) and all parties have interpleaded and filed statements of claim. The claimants are (a) complainant, (b) the defendants Sidney N. Goldberg and Charles Levine, executors of Goldberg's will, (c) the defendant Bank as beneficiary named in the policies and as trustee under the insurance trust agreement, and (d) those defendants who are beneficiaries named in said trust agreement.

"The first question to be determined is whether an effective change in beneficiary was made in the three Metropolitan policies.

"Those policies provide that the insured may designate a new beneficiary 'by filing written notice thereof at the home office of the Company accompanied by the policy for suitable endorsement. Such change shall take effect upon the endorsement of the same on the policy by the Company and not before.' The general rule is that to effectuate a change of beneficiary the method prescribed by the policy must be followed (*Sullivan* v. *Maroney, 76 N. J. Eq. 104; Anderson* v. *Broad Street National Bank, 90 N. J. Eq. 78*) but an exception is made where the insured in attempting to change his beneficiary has done all he could to comply with the policy requirements and has substantially complied therewith. *Prudential Insurance Co.* v. *Swanson, 111 N. J. Eq. 477.*

"For at least five months prior to his death Goldberg had been considering what change to make in beneficial payment under the policies in question. In March, 1935, he consulted his attorney, Lichtenberg, concerning a new will and a distribution of his life insurance different from the provisions of his trust agreement and he then approved a plan under which the complainant would not receive directly any of the insurance money, but would receive an annuity of $3,120 under a new will. A few days later he made changes in that plan and in April, becoming dissatisfied with Lichtenberg's advice, he discarded his ideas and consulted another firm of attorneys and with them discussed a plan to give complainant $200 a month out of the Metropolitan policies, yet when he

executed a new will July 11th, 1935, complainant claims he had made no provision for her although his will says he had. The day he executed his will he wrote the Metropolitan he wished to arrange with that company to retain out of the proceeds of the policies, a sum based on his wife's age which would assure her an income of $200 per month for twenty years certain or for her life, the remainder of the proceeds to be paid to his estate and he requested that forms to effectuate such changes be sent him in care of his new attorneys. Five days later the Metropolitan replied that its policies did not provide for a plan such as Goldberg's letter outlined, pointing out defects therein and suggesting that he give the matter reconsideration and inform it further of his wishes. Thereupon his attorneys wrote the Metropolitan suggesting how its objections could be met. The Metropolitan replied requesting further particulars and suggesting another change and it was not until July 30th, 1935, that the Metropolitan sent the attorneys the forms for change of beneficiary and for income settlement which the company had prepared in an endeavor to meet Goldberg's desire, but in its covering letter it pointed out that if Goldberg's death did not occur until a number of years in the future, the plan would provide complainant more than $200 per month. The covering letter also directed that if found satisfactory, the income settlement and change of beneficiary forms be executed and returned to the company with the policies which (the letter stated) the company required for endorsement. The attorneys forwarded the forms to Levine, who was Goldberg's accountant, and he held them until August 5th before delivering them to Goldberg and the following day Goldberg returned them to Levine stating objections thereto. The change of beneficiary forms name complainant as beneficiary of 38,192/50,000ths of the proceeds of the policies and Goldberg's estate as beneficiary of the balance and the income settlement form provides that the first named sum shall be retained for complainant and shall be paid to her monthly in proportionate parts for twenty years, or for life, and if the amount payable under the policies should be less than the face of the policies, the monthly payments to complainant shall be reduced proportionately.

"Goldberg's letter of July 11th, 1935, to Metropolitan cannot be taken as a definite direction for change of beneficiary; it was no more than a statement that he was contemplating a change and wanted to learn whether and how he could accomplish what he then had in mind, and it is apparent that after having written the letter, he was in no haste to come to a final decision as to the manner of disposal of his insurance moneys. He was going and did go to Detroit the afternoon of August 13th and his indecision on the plan continued, for according to Levine and Sidney Goldberg the former telephoned Goldberg the morning of the 13th and explained away Goldberg's latest objections, whereupon Goldberg said to return the forms to him and he would 'take care of them.' Levine's office was in New York City and Goldberg was taking the train from that place. If Goldberg was satisfied with the plan and was then prepared to carry it through, it seems to me he would have delayed no longer and would have arranged to meet Levine in the city and sign the forms for change of beneficiary and for income settlement, before going on his journey. The forms reached Goldberg's office the day after he had left for Detroit and he died from a heart attack on his return trip without having seen the forms again. He may have intended to make some provision for complainant but it does not appear that he had reached a definite conclusion as to how he would do it, whether by giving her a portion of the insurance moneys or possibly in some other way or, if he had decided to allow her a portion of the insurance proceeds, in what manner he would dispose of the remainder.

"His delay in making up his mind showed no anxiety on complainant's behalf and notwithstanding that he called her in his will his 'beloved wife,' their relations were not cordial, for they had not resided together in many years; her home was in Massachusetts and his was in this state. There is testimony (though contradicted) to show that Goldberg was not satisfied with the plan provided in the income settlement form even after it is said Levine had removed his latest objection. One witness said Levine was at Goldberg's office a few days after the former had received the forms from Gold-

berg's attorneys and that something was then said about signing insurance papers and Goldberg replied, 'I got plenty of time for that. I will take care of it later.' Another witness testified that the day Goldberg left for Detroit, Sidney Goldberg said to his father, 'Tannenbaum wants you to sign some insurance papers before you leave,' and Goldberg replied, 'I got time for those things. I am talking to Irving now.' A third witness testified that the same day, Tannenbaum asked Goldberg if he had time to sign some insurance papers and Goldberg replied, 'I got plenty of time for that. I am not dying yet,' and a fourth witness testified Goldberg told her the afternoon of the day he left for Detroit that he was in trouble with insurance papers; that they were after him to sign and that they were trying to get him to sign insurance papers.

"In *Prudential Insurance Co.* v. *Reid, 107 N. J. Eq. 338,* the insured had forwarded his policy with written request for change of beneficiary and both were duly received at the company's home office but the company had failed to endorse the beneficiary change on the policy up to the time the insured died, over three weeks after the company had received the executed change of beneficiary and the policy. It was here held that because the insured had done all he was required to do to entitle him to have his policy endorsed, equity would regard that done which should have been done. Here Goldberg not only failed to execute the necessary forms for change of beneficiary and income settlement and to forward his policies for endorsement, but the evidence is not conclusive that he had fully determined how the proceeds of his policies should be distributed. I cannot agree with complainant that the way in which he dealt with those policies coupled with the statement he made in the second paragraph of his will, clearly demonstrates that his purpose was to provide for her out of the policies in the manner and to the extent set out in the income settlement form, or that he would have executed that form but for his sudden death.

"The next question for determination is whether the life insurance trust agreement with the Bank was revoked.

"February 7th, 1935, Goldberg wrote the Bank requesting that all his policies be sent to Lichtenberg. He stated he desired to have them looked over and checked and that they would be returned to the Bank 'for safe keeping.' In complying with his request the Bank said in its accompanying letter, that it understood the policies would be returned to it. Then followed Goldberg's letter of March 21st, 1935, to the Bank wherein he declared his exercise of his right to revoke and terminate the trust agreement. Although the letter stated that the Bank would be notified of an effective revocation date, it was noticed that the withdrawal of the policies a month previous for inspection, was now unconditional and that the policies were then held by Goldberg pursuant to his right under the trust agreement to withdraw any or all policies from the custody and possession of the Bank. Co-incident with his letter of revocation to the Bank, Goldberg requested the insurance companies to send him forms for change of beneficiary, which act, with his subsequent change of beneficiary in five policies and the execution of a new will, also demonstrate his intention was never to place the policies again in the custody and possession of the Bank under his trust agreement with it.

"Upon receipt of the letter of March 21st, 1935, the Bank sent Voorhees, its 'new business getter,' to see Goldberg either for the purpose of inducing Goldberg to withdraw his revocation or to secure new business for the Bank under a new form of trust agreement. The interview was unsatisfactory from the Bank's standpoint and Voorhees requested Goldberg to call on the president of the Bank to discuss matters with him, which Goldberg said he would do but did not. Voorhees reported the result of his interview to the Bank's president who thereupon wrote Goldberg under date of April 11th, 1935, stating that Voorhees had made report to him and had said he (Voorhees) was informed that the reason 'the trust relationship was severed with us, was because, &c.,' and the Bank president requested Goldberg to call on him. The statement in this letter that the Bank understood 'the trust relationship was severed' must have been because Voorhees reported Gold-

berg had so stated to him. This conclusion is supported by the further statement in the president's letter, 'we would not solicit your business unless we are able to satisfy you that the establishment of a trust relation with us is to your distinct advantage,' for if Goldberg had not informed Voorhees that the trust agreement was at an end and Voorhees had not so stated to the Bank's president, there would be no need to 'solicit' a business which the Bank still had and the reference would have been to the continuation of the trust and not to the 'establishment' of a new one.

"In any event the statement by the Bank president that he understood that trust to be at an end, made it unnecessary for Goldberg to give the Bank any further notice of an effective revocation date and, it seems to me, estops the Bank from now asserting that the trust was not properly revoked. There followed some correspondence between the Bank, Goldberg and Lichtenberg in a fruitless endeavor by the Bank to induce Goldberg to call at the Bank to discuss his affairs. I conclude that there was an effective revocation and termination of the trust agreement by written notice to the Bank followed by subsequent definite notification of revocation through Voorhees. I further conclude that since the policies which were the subject of the trust were withdrawn from the custody of the Bank trustee with intention formed then or later never to return them, the purpose of the trust no longer existed and that such withdrawal followed by Goldberg's, subsequent acts with reference to the policies was also a revocation and termination of the trust. *Equitable Life Assurance Society* v. *Janssen, 14 N. J. Mis. R. 837; 187 Atl. Rep. 643.*

"Finally, there being a complete failure of the trust by reason of its revocation, the three Metropolitan policies for all legal purposes became payable to Goldberg's estate and if the Bank trustee, named as beneficiary therein should receive the fund it would be deemed to hold it as trustee of a resulting trust in favor of the estate and would be directed to pay the same over to the estate. *Prudential Insurance Co.* v. *Bloomfield Trust Co., 104 N. J. Eq. 372; In re Goldwitz, 259 N. Y. Supp. 900.*

"Since the fund is now in court and the insurance company has no concern as to the manner of its disposition, circuity should be avoided and a decree should be entered directing payment of the fund direct to the executors under Goldberg's will to be administered by them according to the terms of the will."

*Mr. Maurice C. Brigadier,* for the defendants-appellants.

*Mr. Stuart A. Young,* for the complainant-respondent.

*Messrs. Pitney, Hardin & Skinner,* for the defendants Charles Levine et al., executors, &c.

*Mr. J. Albert Homan (Mr. Ewald J. J. Smith,* of counsel), for Edward L. Whelan, guardian *ad litem.*

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion of Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, WELLS, WOLFSKEIL, RAFFERTY, JJ.    10.

*For reversal*—None.